# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

ELISHA D. ALLEN, :
:
    Claimant, :
:
v. : CASE NO. 5:10-CV-123- MTT-MSH
: Social Security Appeal
MICHAEL ASTRUE, :
Commissioner of Social Security, :
:
    Respondent. :

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability benefits and supplemental security income, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court's role in reviewing claims brought under the Social Security Act is a

narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.¹ *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq*.

Under the regulations, the Commissioner uses a five-step procedure to determine if a

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

claimant is disabled. 20 C.F.R. § 404.1520, app. 1, pt. 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

**Administrative Proceedings**

Claimant protectively filed for disability benefits and Supplemental Security Income benefits on November 2, 2007, alleging a disability onset date of October 1, 2007, due to bi-polar disorder. (Tr. 125.) Her applications were denied initially and upon reconsideration. (Tr. 61-71.) Claimant timely filed a request for a hearing, and on March 11, 2009, a hearing was held. (Tr. 26-59.) On April 14, 2009, the ALJ entered an unfavorable ruling (Tr. 8-25),

3

and the Appeals Council subsequently denied Claimant's request for review (Tr. 1-5). This appeal followed.

**Statement of Facts and Evidence**

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since October 1, 2007. (Tr. 13.) The ALJ also concluded that Claimant's bipolar disorder was severe, but that it—or any combination of her impairments—did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14.) The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform a range of work at all exertional levels. (Tr. 14.) The ALJ determined that Claimant was a younger individual, with at least a high school education, who could communicate in English. (Tr. 23.) The ALJ then found that transferability of job skills was not relevant based on the Medical-Vocational Rules (GRIDS). (*Id.*) Considering the Claimant's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Claimant could perform. (*Id.*) Thus, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act. (Tr. 24.)

**DISCUSSION**

The sole issue for determination in this case is whether the ALJ properly determined that the Claimant's bipolar disorder did not meet Listing 12.04. (Cl.'s Br. In Supp, of Compl. 1, ECF No. 8.) Specifically, she contends that the ALJ erred in assessing the functional limitations associated with her bipolar disorder and that he erred in failing to find that her

4

bipolar disorder is uncontrolled by her medications. (*Id.*)

I.   **Assessment of Functional Limitations**

Listing 12.04, the listing for Affective Disorders, is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04. The requisite severity of that listing is met if the Claimant can demonstrate the existence of a specific type of disorder as well as at least two of the following:

1.   Marked restriction of activities of daily living; or
2.   Marked difficulties in maintaining social functioning; or
3.   Marked difficulties in maintaining concentration, persistence, or pace; or
4.   Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, subpt. P, app. 1, pt. A, §12.04B.[2]

Claimant first argues that the ALJ incorrectly assessed her limitations in the three categories of activities of daily living; social functioning; and concentration, persistence and

---

[2]Alternatively, Claimant may demonstrate, in subsection C, a:
Medically documented history of a chronic organic mental disorder [or a chronic affective disorder] of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1.   Repeated episodes of decompensation, each of extended duration; or
2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
20 C.F.R. § 404, subpt. P, app. 1, pt. A, § 12.04C. Claimant, however, does not argue that she has met subsection C in this case.

5

pace in determining that her bipolar disorder did not meet a Listing. (Cl.'s Br. 3.) The record reveals however, that the ALJ considered each of these criteria with respect to Listing 12.04 and found that Claimant had only mild, as opposed to marked, restrictions in activities of daily living, moderate restrictions in maintaining social functioning, moderate restrictions in maintaining concentration, persistence, or pace; and that Claimant had experienced no episodes of decompensation. (Tr. 21.) The ALJ therefore concluded that Claimant had not satisfied the paragraph B criteria of Listing 12.04 because her mental impairment did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation. *Id.*

The court finds that the ALJ's conclusions were based on substantial evidence and that the ALJ did not err. In finding that Claimant has the residual functional capacity to perform work available in the national economy considering her age, education and work experience, the ALJ specifically gave weight to the findings of two consultative psychologists employed by the Georgia Disability Determination Services. (Tr. 22.) In his February 2008, review of available medical records, Dr. Morgan Kyle completed a psychiatric review technique form (PRTF) as required by 20 C.F.R. § 404.1520a-(c) and made a mental RFC assessment. It was his finding that Claimant has an impairment more accurately characterized as an affective disorder (Tr. 240) but the evidence did not meet the requirements necessary to establish an inability to work. (Tr. 251.) Dr. Kyle found: 1) that Claimant had no substantial limitations on her mental ability to work; 2) had only moderate limitations on her ability to maintain

attention and concentration for extended periods of time; 3) was moderately limited in her ability to complete a normal, uninterrupted workday and do so at a consistent pace considering her symptoms from her mental impairment; 4) had no more than moderate limitations on her ability to follow instructions and respond to criticism in an appropriate manner; and 5) had only moderate limitations on her ability to respond appropriately to changes in the workplace. (Tr. 240-256.) In assessing Claimant's functional limitations, Dr. Kyle found Claimant to have mild restrictions in her daily activities, moderate difficulty in social functioning, moderate difficulty in maintaining concentration, persistence and pace of activity and no episodes of decompensation. (Tr. 250.) In her July 2008, review, Dr. Judith Piat reached virtually the same conclusions as Dr. Kyle. (Tr. 289-93.)

The record reveals that the ALJ exhaustively detailed the complaints of Claimant and the corroborating testimony of her mother (Tr. 15-17) but found them to be only partially credible (Tr. 22) based on his determination that Claimant's medical treatment record is less than reasonably expected as to both type and frequency in a person suffering from disabling mental illness, her activities of daily life are consistent with a person who can work, and objective medical evidence in the record as a whole supports a finding that Claimant can work within limitations and subject to the restrictions specified in the RFC. As such, no error is found with the ALJ's assessment of Claimant's functional limitations.

## II.   Evaluation of medications to control impairment

Claimant also argues that the ALJ erroneously failed to determine that her bipolar disorder was inadequately controlled by her prescribed medications. (Cl.'s Br. 5.) Claimant

7

charts a series of changes and adjustments to her medication which, while impressive and accurate, does not reflect when and whether Claimant actually took the medicine as prescribed nor is it supported by the testimony of any witness, lay or expert, that the changes represent failure. To the contrary, throughout the record are references to Claimant's improvement when she takes her medication (Tr. 311, 312) including Claimant's testimony (Tr. 37) and the testimony of her mother (Tr. 48, 49). In her brief, Claimant admits to failing to take her medications, but fails to address the evidence consistent with the longitudinal record of noncompliance with those medications. (Cl.'s Br. 5.)

The record reveals that the ALJ specifically discussed the adjustments made by Claimant's doctors to her medications and also noted that she had not always been compliant in taking those medications. (Tr. 15.) A review of the opinions of the consultative examiners, as well as the medical records in this case, substantiate that finding. Thus, the Court finds that the ALJ properly evaluated the effect of Claimant's prescribed medications in controlling her bipolar disorder, and the ALJ's finding is based on substantial evidence.

## CONCLUSION

WHEREFORE, it is the recommendation to the United States District Judge that this case be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

THIS the 8th day of February, 2011.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE